| | |
|---|---|
| **JOHN DILLON**, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| **GENERAC POWER SYSTEMS, INC**. | <u>JURY TRIAL DEMANDED</u> |
| Defendant. | |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff John Dillon ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Generac Power Systems, Inc. ("Generac" or "Defendant"), and alleges the following based on personal knowledge as to himself and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## <u>INTRODUCTION</u>

1.      Generac is a Wisconsin based manufacturer of ostensibly clean energy management systems which it also markets and distributes to consumers throughout the United States. Included among its clean energy offerings, Generac manufactures the PWRCell System (the "System"). The Systems contain "SnapRS 801" connector components. The SnapRS 801 Switch contained in the System however are defective as a consequence of which they malfunction, causing decreased energy production for completely impeding energy production from Plaintiff's and Class Members' residential or commercial solar energy systems. In some cases, the SnapRS 801 switch

1

has deformed, melted or even caught fire during normal use thereby causing unsafe conditions and potentially life threatening consequences and/or property damage to Plaintiff's and Class Members' solar energy systems and property.

2.    Such systems containing this defective component were sold to customers throughout the United States.

3.    By way of background, Generac purports to provide "Affordable Power Solutions." Its offerings include "back up and prime power generation systems for residential and commercial & Industrial (C&I) Applications, solar+ battery storage solutions, energy management devices and controls, advance power grid software platforms & services, and energy & batter – power tools and equipment."[1]

4.    Importantly, Generac represents to consumers that it purports to "protect the things that power your life by providing quality, affordable power solutions."[2]

5.    Generac further holds itself out to consumers and represents itself as being on the cutting edge of the energy market while purportedly providing cost-efficient and environmentally sustainable solutions.

6.    With regarding to the PWR cell system that Generac manufactures, markets, and distributes, Generac represents that the "PWR cell offers 30% more power output than our competitors [], and it offers more storage capacity."[3]  Generac's system relies on solar panels to produce electricity. These solar panels are integrated into the system. Consumers thus have the option of programming how their electricity is used and can track electricity production for powering their homes, for storage in a generator, for storage in back-up batteries, or for selling

---

[1]    Investor relations, Generac, https://investors.generac.com/(last visited December 19, 2022)

[2]    About us, Generac, https://www.generac.com/about-us (last visited December 19, 2022).

[3]    PWRCELL Solar+, battery stored system, Generac https://www.generac.com/GeneracCorporate/media/Library/content/Clean%20Energy/PWRcell/PWRCell_Consumer_Brochure_Digital_9_15_22.pdf (last visited December 19, 2022.

2

electricity backed to the utility company that traditionally powered the consumers home, also called "net-metering."

7.     The baseline price for a system is approximately $47,000 (including installation). According to Generac, usage of a fully functional system can save consumers approximately $6,217.00 over the course of 25 years. Generac sells the systems through authorized dealers.

8.     At all times material, Generac knew that the SnapRS 801 switch was defective as early as April 2021. Nonetheless, Generac continued to manufacture, market, and distribute the SnapRS 801 switches, and incorporate them as components in Generac's system.

9.     Despite its many positive representations and representing that customers would save tens of thousands of dollars over many years, Generac did not notify Plaintiff or Class Members that the system was defective by reason of containing the SnapRS 801 switch, which would impede the production of energy from their solar energy systems and also impose serious safety hazards.

10.    Plaintiff and Class Members were unaware that the systems contained such defective switches which they purchased this part of their solar energy systems, and that such components were defective and could effectively reduce or completely impede home energy production or otherwise present safety hazards to themselves, family members and others, or otherwise could catch fire during normal use causing damage to their solar energy systems and homes.

11.    Plaintiff and Class Members suffered damages as a result of Generac's misrepresentations and omissions regarding its system deploying the SnapRS 801 switch. Consumers did not receive the benefit of a fully functional system by virtue of such design and manufacturing defect, as described more fully below, which rendered such systems unsuitable for their intended use.

12.    Plaintiff and Class Members would not have purchased such solar energy systems equipped with the SnapRS 801 switches and solar contractors would not have installed such

systems in Plaintiff's and Class Members' homes or businesses if such defective component and its consequent safety hazards and potential for property damage had been timely disclosed.

13.     Indeed, Generac has undertaken a deliberate, willful effort which has concealed the defect from consumers, including Plaintiff and Class Members even though it knew or should have known that the systems that it advertised, marketed, and sold contained the defective component, which it never disclosed to or otherwise warned consumers about, or otherwise offered to replace at Generac's own cost with a non-defective replacement component.

14.     Generac has represented that there are replacement snaps available to consumers. However, consumers are unable to purchase the parts from Generac directly, and they are unable to secure service of the defective snap components from authorized dealers. As a consequence, Plaintiff and Class Members are left with systems that do not function as intended or must seek service from independent technicians rather than those within Generac's dealership network, forcing consumers to void their warranties in order to receive such service on their systems.

15.     Beyond failing to remedy the defect, by replacing the component with a non-defective snap component, at its own expense, Generac has also failed to recall the systems and thus has avoided remedying the defect.

16.     As a consequence, Plaintiff and similarly situated Class Members are entitled to compensation for losses that they have or are at risk of sustaining including the cost for replacing the SnapRS 801 switches in their solar energy systems and any further, direct, and consequence of damages, including such defective components decreasing or completely impeding energy production from Plaintiff's and Class Members' residential solar energy systems and damage that has been experience to property as a consequence of such uniformly defective component switches melting, deforming and/or catching fire.

**Parties**

17.     Plaintiff John Dillon is a resident and citizen of Franklin, Tennessee who purchased one of the aforementioned systems at issue on or around October 2021.  The System is not performing as expected and contains the defective SnapRS 801 switch.

4

**Defendant**

18.     Generac Holdings Inc. ("Generac" or the "Company") is a Delaware corporation headquartered in Waukesha, Wisconsin, that operates as a diversified energy solutions company providing an array of energy management technology as well as prime and backup power solutions. The Company manufactures, markets, and distributes a variety of products across North America and abroad.

19.     Generac designs, manufactures, markets, and distributes in and from this district, including the systems containing the defective Snap RS 801 component. Generac regularly does business in this district directly and through numerous authorized dealers and contractors, including solar energy system installers.

## JURISDICTION AND VENUE

20.     This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because at least one Class Members is of diverse citizenship from Generac, there are more than 100 class members, and the aggregate amount in controversy exceeds $5 million, exclusive of costs and interest.

21.     This court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims and claims pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*

22.     This court has personal jurisdiction over Generac because it is headquartered in, and does business in, the State of Wisconsin and avails itself of the privilege of conducting by advertising and selling its PWRCell solar energy and battery storage systems, which included the SnapRS 801 switch at issue. Additionally, Generac's conduct at issue herein took place in, originated in, or was implemented, in whole or in part, within the State of Wisconsin.

23.     Venue is proper in this court under 28 U.S.C. § 1391 because of substantial part of the events giving rise to Plaintiff's claims occurred in this district, and because Generac transacts business and maintains facilities in this district, including having its principal place of business in the District, and thus is subject to personal jurisdiction.

5

## SUBSTATIVE FACTUAL ALLEGATIONS

24.     Generac's primary business is manufacturing electric generators and back-up power solutions. The Company represents itself as having experience and expertise in manufacturing energy and storage products and equipment, including battery storage systems, inverters, optimizers, disconnect switches and other solar energy system components.

25.     The SnapRS 801 switch and products that rely on it are made by Generac's Residential Solar Energy Solutions Division which it also refers to as its clean energy division.

26.     Over the years, Generac expanded its footprint from one traditionally engaged in producing back-up power and traditional generators into producing renewable energy generation products, and predominantly focusing on solar energy systems. Generac's Residential Solar Energy Solutions division began manufacturing and continues to manufacture a battery-based storage solution called PWRCell that stores and manages electricity generated from solar panels.

27.     According to the Solar Energy Industries Association, the solar power market in the United States is estimated to be approximately $33 billion. Over the years, electricity production from solar energy has exploded and is now more than 80 times greater than it was just approximately ten years ago. It is predicted that if things continue to develop as they have over the last decade, approximately 13% of the homes in the United States will have photo solar voltaic systems by 2030.[4]

28.     Over the years Generac has increasingly heavily promoted PWRCell as a way to mitigate high energy costs by storing solar energy for use during peak demand hours on traditional electricity are high.

29.     Generac describes the system as "a fully integrated solar+ battery storage system." Consumers cannot purchase solar panels from Generac. However, the PWRCell, provided by Generac enables consumers to manage electricity produced by solar modules for consumption

---

[4]     Solar data cheat sheet, solar energy industries association, https://www.seia.org/research-resources/solar-data-cheat-sheet.

within their home or business. Consumers are able to integrate new or existing solar panels into the PWRCell system and as part of their overall electrical inflow by utilizing PV Link and SnapRS connector components. The SnapRS (rapid shut down delays) connector components constitute what is referred to as a "in-line disconnect device" that is supposed to help satisfy "module-level rapid shut down requirements."

30. Solar management systems, like the PWRCell, are required by state regulation to include a rapid shut down device meant to isolate solar panels that could have exceeded safe operation voltage thresholds. Generac's SnapRS was the rapid shut down device used in its PWRCell and is essentially a type of inverter. Generac produced different models of the SnapRS including SnapRS 801, SnapRS 801A, and SnapRS 802.

31. Generac consistently advertised at all times material that its SnapRS component was compliant with the National Electric Code ("NEC") 690.12 Rapid Shutdown of PV Systems on Buildings and Underwriters Laboratories ("UL") standard UL 1741, and that it was manufactured in an International Organization for Standardization ("IOS") 9001 certified manufacturer facility. The UL 1741 standard was specifically created as a "product safety standard that lays out the manufacturing (including software) and product testing requirements with a goal of producing inverters more capable of riding through grid excursions or even actively managing grid reliability functions."

32. At all times material, Generac advertised that its SnapRS 801 meets national electric 2017 and 2020 requirements, further representing to consumers that "insulation is quick

7

and toll free."[5]  Generac further represents to consumers that snaps are able to reduce output to 75D in under 10 seconds.[6]  And that its warranty extends for 25 years.[7]

33.     Generac consistently touted its engineering acumen and its system, ensuring the public that "safety is paramount" while representing that "Generac maintains a robust product safety function that is involved in all aspects of product design and production. We have a Product Safety Committee that participates in our new product development process in an effort to ensure that our products meet all applicable internal engineering design and safety standards…"

**Generac was aware of the Defect and associated safety hazards regarding the SnapRS 801 switch.**

34.     Generac was aware of the defect posing serious safety hazards to persons and their property associated with the SnapRS 801 switch (the "SnapRS 801 Defect") as early as April 2021 but failed to notify Plaintiff and a multitude of Class Members.

35.     Due to the SnapRS 801 Defect, many PWRCell systems were operating without an effective rapid shutdown device, as outlined and otherwise required by NEC 690.120, which standards were adopted by many states as part of their building a compliant rules and regulations.

36.     Channel partners play an essential role in generic solar business. Contrary to the company's assurances that "safety is paramount," at least by April 2021, one of Generac's nationwide solar contractors, Power Homes Solar, LLC d/b/a Pink Energy ("Pink"), had reported to Generac that it had discovered a melted SnapRS 801 switch during a service call for customers in Cincinnati, Ohio. These customers had complained of decreased energy production from their residential solar energy system. Pink described the phenomenon as an over-heating event in which SnapRS 814 units, engineered to be a system fail safe, had shown clear signs of heat deformation,

---

[5]     PWRCell Full System Overview, Generac, https://www.generac.com/for-homeowners/clean-energy/clean-energy-ecosystem (last visited December 19, 2022).

[6]     *Id.*

[7]     *Id.  See also* Generac power systems limited warranty for Generac PWRCell® Generac, https://prod-generacsoa.azurefd.net/manualsweb/manuals/APKE00011/A000416920 (last visited December 19, 2022).

8

charring, and melting. Pink provided detailed photos of the defective units in its effort to alert Generac to the product component defect.

37.     Generac had access to operational data of many PWRCell systems, access to PWRCell lock out data, and system error nationwide.

38.     By at least the Summer of 2021, several generic channel partners who had been communicating with one another had confirmed that defective SnapRS 801 units were not in isolated currents and, their malfunction was being experienced throughout the United States. For example, in August 2021, another solar installer, Valley Solar, informed Generac that the SnapRS 801 switches were experiencing a high failure rate and that they had been showing signs of heat deformation and charring. Then, in early August of 2021, the first known residential fire occurred in a home with a PWRCell system belonging to a Pink customer in Lancaster, Kentucky. The cause of that fire was over heating of the SnapRS 801 switches in the homeowner's solar energy system.

39.     Plaintiff is informed and believes, and thereupon alleges, that on August 12, 2021, Generac and Pink participated in a conference call during which Pink representatives were informed that Generac was investigating "bulging and separation" issues associated with the SnapRS 801 switches and that Generac was in the process of developing and testing an updated model of the SnapRS 801 switch which it was referred to as the 801A. During the conference call Pink inquired about the cause of the fire and related hazards associated with SnapRS 801 to which Generac's Vice President of Engineering informed Pink that it was investigating the cause of the overheating issues amid Generac's acknowledgment that it was developing and testing a new model – SnapRS 801A – in an effort to correct the defect.

40.     Shortly thereafter, on August 18, 2021, a fire occurred at the home of a Pink customer in Lexington, South Carolina. The cause of the fire was determined again to be a melting and/or exploding SnapRS 801 switch.

41.     Meanwhile during various times material, Pink Energy was receiving reports from consumers who had Generac PWRCells that defective SnapRS 801 units disabled blocks of solar panels which were resulting in significantly reduced output. Some of the reports indicated that

9

defective SnapRS 801 components had disabled the entire solar energy system thereby rendering it useless while requiring consumers to expend time and requiring the company's service channel partners to make service calls which were expensive. Plaintiff is informed and believes and thereupon alleges that Pink promptly shared these reports with Generac.

42.     And according to Pink, on June 30, 2022, a third residential fire occurred in a home with a PWRCell system. The cause of the fire was under investigation though Pink has taken the position that information available to it had pointed to defective SnapRS 801 units as the catalyst of the fire.

43.     On or about August 19, 2021, Generac's Direct of Sales for its East Region, Jeffrey McAndrew, informed Pink that Generac had found that SnapRS 801 switches were overactive by turning on and off repeatedly when they should have been in either the "on" or "off" state. This condition generated heat in the SnapRS 801 switches causing them to "bubble out."  Generac reassured Pink that a firmware update would remedy the issue.

44.     All the while, Generac concealed from the public its knowledge of the SnapRS 801 defect and the fact that the company developed the new SnapRS versions to try and correct the defect, electing instead to deceptively refer to the new SnapRS versions as an "upgrade."

45.     And due to the defect of design and/or manufacturer of Generac's Snaps product, and the result and overall activity such that they turn "on and "off" repeatedly instead of remaining in the "on" or "off" position, the units overheat leaving them deformed and, in various cases even charred, which deformation can cause the Snaps to bulge and separate.

46.     As a result of overheating, customers experience a "PVRSS Lockout" error in their systems which thereby causes their systems to shut down. When the PV Link or Inverter detects a malfunctioning or overheating snap existing in a particular solar panel configuration, the solar system goes into "lockout mode" and stops generating any power until the lockout is lifted, which requires a service technician to replace the faulty snaps that were causing the "lockout mode" in the first place.

10

47.     Although Generac represented to Pink that the firmware update would remedy the issue, the SnapRS 801 switch continued to malfunction. It was subsequently discovered by Pink that the cause of the decreased energy production from residential solar energy systems equipped with the SnapRS 801 switches was what the Generac converter quoted on the digital display as a "PVRSS Lockout" system error. This was determined to be caused when a PV Link or Inverter detected a malfunctioning or overheating SnapRS 801 switch in the PV modules (solar panels) thereby causing the entire panel array to go into "lockout mode," and stop generating energy until there was no longer a lockout mode because the malfunctioning or overheating SnapRS 801 switch was fixed.

48.     In an effort to clear the PVRSS Lockout mode, it was necessary for the homeowner to visually inspect the digital display on the inverter to be informed of the error and for a service technician thereafter to replace the SnapRS 801 switch on the solar panel array that was put into lockout mode due to the defect.

49.     Failure rates continued. Plaintiff is informed and believes and thereupon alleges that Generac has acknowledged the near 50% failure rate in its SnapRS 801. It experienced in an inundation of complaints regarding general performance issues with the System.

50.     Generac issued firmware "updates" in or around August 2021 that could be downloaded to the system. These updates kept the "on" or "off" signal constant until the system was forced into rapid shutdown as intended with the functionality of the SnapRS 801.

51.     While Generac did not make public its knowledge of the SnapRS 801 defect, it deceptively referred to the new SnapRS version it subsequently introduced as a "upgrade."

52.     On August 19, 2021, Generac's Director of Sales for its East Region informed Pink Energy, by email, that Generac discovered a few SnapRS 801 units to be "overactive" causing malfunctions. In the email Generac Director of Sales assured Pink that Generac was already developing new firmware that would address the issue. Thereafter, by late 2021, Generac started to supply the SnapRS 801A and informed Pink, for example, that the SnapRS 801A was redesigned to mitigate the known issues with the SnapRS 801 model. Still, the general public was not made

11

aware of the SnapRS defect, even as overheating issues with the Snaps were assisted due in part, to the fact that customers did not have their systems connected to the internet – a situation that Generac was or should have been aware of due to its ability to monitor consumer systems. Thus, many consumers did not receive the firmware updates and, for those who did, the updates themselves caused customers' systems to shut down for extended periods of time. The SnapRS 801A model, which was released in late 2021, was characterized as a redesign of the original 801 Snap model. Nonetheless, the SnapRS 801 defect persisted as did the "PVRSS Lockout" issue.

53. Although Generac gave reassurances to its channel partners that the firmware update and the revised SnapRS 801A would bring the PWRCell into working order, its firmware updates were only available to PWRCell systems that were connected to the internet. Thus, those who were not connected did not receive the updates. They continued to face the risk of inconsistent and dangerous performance.

54. Generac knew that the firmware update, though ostensibly a fix for the SnapRS 801 issues, had adverse effects that could still shutdown the entire PWRCell Systems. Generac knew that the SnapRS 801A suffered from the same defects as the SnapRS 801 and that it had failed to correct the dangerous defects that the update was purportedly supposed to rectify.

55. On or about June 2022, when discussing the need to replace the 801 and 801A models, Generac informed the public that there were issues that it needed "[t]o address" and that it needed to "help better optimize and enhance the performance of [its] PWRCell Solar+ storage system over the long term." But Generac did not admit that the Snaps were defective nor did it warn customers about these potentially dangerous issues arising from the Snaps defect.

56. From at least April 2021, service calls to channel partners to address defective SnapRS components continued to grow. Pink calculated internally that the SnapRS defect caused "an approximately 3,650% increase in customer service calls between late 2021 and early 2022. Pink has further maintained that Generac was unable to supply enough replacement SnapRS units to keep up with the volume of defective SnapRS units.

57.     Meanwhile, and despite knowledge of the defect associated with the SnapRS 801 components, Generac repeatedly touted the safety of its products, the rapid growth of its home solar division, and the PWRCell system, specifically.

58.     During the Summer of 2022, channel partners such as Pink and Solar Valley were conducting large scale replacements, removing charred and melted SnapRS 801 units as well as SnapRS 801A units that showed the same defects as the SnapRS 801 model. On or about June 2022, Generac admitted that needing to replace the 801 and 801A Snap models and announced the release of the 802 Snap model which Generac described as being "designed and engineered to the highest safety and reliability standards," adding that the 802 Snap model "ha[d] been tested in extreme heat and corrosive moisture conditions with exceptional results. Generac sent letters to customers promising that the 802 model was a true fix while at the same time making no public disclosure of the defective nature of the SnapRS 801 and 801A models. Meanwhile, Generac has not replaced all Snaps currently in use to date and the defect continues to manifest.

59.     As a consequence of the ongoing defect, owners of Generac's PWRCell have been left with solar energy systems that could become unusable or dangerous.  The defect renders systems unfit for their ordinary purpose for which they are purchased.

60.     The defects further pose an unreasonable risk of harm to consumers and their property. They are subject to premature failure. SnapRS 801 units overheat, melt, explode, or otherwise malfunction. Such defects can cause fire damage to consumers' homes as well as power surges, loss of electricity and loss of monetary savings that consumers had expected as a benefit when purchasing the systems.

61.     Generac consumers have filed complaints with states Attorney General and federal regulators. They have filed lawsuits against Pink.

62.     Two state Attorneys General have filed lawsuits against Pink relating to the defective Generac products. At least three other attorneys general, as well as multiple U.S. regulatory agencies, have ongoing investigations related to Generac's defective products.

13

63.     On November 22, 2022, Attorneys General of the States of Kentucky, North Carolina, Illinois, Michigan, Indiana, Pennsylvania, South Carolina, Tennessee, and Virginia sent a joint letter to companies that provided financing for consumer purchases of solar power systems from Pink which the letter asked for a suspension of repayments for non-working systems.

64.     So far, Generac has not issued any broad recall of the Snap RS, nor has it provided any broad warning about the hazards relating to the SnapRS 801.

65.     Had Plaintiff and putative class members known that the systems were defective, pose an unreasonable risk of harm to themselves and their property, and could and would cause damages, they would not have purchased the systems at all, on the same terms, or for the same price.

**The defect has directly and proximately caused damages to Plaintiff and Class Members.**

66.     As a direct, proximate, and foreseeable result of the Defect, Plaintiff and putative Class Members have suffered damages, including but not limited to: (a) the difference in value of the systems as purchased and the systems as received; (b) loss of use of the systems; (c) cost to repair or replace a system, including labor and parts; (d) consequential damages; and (e) damage to property other than the systems.

67.     Defendant's conduct described herein has caused decreased energy production in Plaintiff's and Class Members' solar energy systems resulting in higher energy bills and, has caused damage to solar energy systems and property where fires and related meltdowns have occurred. Plaintiff and Class Members have also been damaged to the extent that they had, have to, or have already, incurred costs for replacing the SnapRS 801 switches to the extent that those costs were not covered by Defendant.  Such ascertainable losses and actual damages resulting from Defendant's unlawful practices and related product defect include the cost for replacing the SnapRS 801 switches and their residential solar energy systems when this cost were not covered by Generac; cost for troubleshooting Plaintiff's and Class Members' residential solar energy systems when the defective SnapRS 801 switches caused other components to turnoff for

14

malfunction; electrical bills incurred as a result of their residential solar energy systems not functioning properly and a full efficiency as a result of the SnapRS 801 switches decreasing or completely impeding energy production from Plaintiff's and Class Members' residential solar systems and damage to Plaintiff's and Class Members' residential solar energy systems and their property as a result of the SnapRS 801 switches melting, deforming, and their catching fire.

68.    Generac has refused to compensate Plaintiff and Class Members for electrical bills incurred as a result of their residential solar energy systems not functioning property and at full efficiency when those solar energy systems, if performing properly, would have generated energy for most if not all the Plaintiff's and Class Members' home energy needs.

69.    Generac has refused to compensate Plaintiff and Class Members for increased electric bills arising from decreased energy production caused by malfunctioning Generac's SnapRS 801 switches not covered by its warranty.

## CLASS ACTION ALLEGATIONS

70.    Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action on behalf of himself and on behalf of a Nationwide Class, defined as:

### Nationwide Class

All persons and entities within the United States (including its Territories and the District of Columbia) that purchased and had installed a residential solar energy system equipped with Generac SnapRS Rapid Shutdown Inline Disconnect switches (the SnapRS 801 switch).

71.    In the alternative to the Nationwide Class, and pursuant to Federal Rules of Civil Procedure Rule 23(5), Plaintiff seeks to represent the following State Class as well as any subclasses or issue classes as Plaintiff may propose and/or the Court may designate at the time of class certification:

15

**Tennessee Subclass**

> All persons and entities within the State of Tennessee that purchased and had installed a residential solar energy system equipped with Generac SnapRS Rapid Shutdown Inline Disconnect switches (the SnapRS 801 switch).

72. Excluded from all classes are Generac, as well as Generac's employees, affiliates, officers, and directors, including franchised dealers, any individuals who experienced physical injury as a result of the defect at issue in this litigation, and the judge and court staff to whom this case is assigned.

73. Plaintiff reserves the right to modify and/or add to the Nationwide and/or State Class prior to class certification.

**Fed. R. Civ. P. 23(a) Prerequisites**

74. **Numerosity**. Both the Nationwide and State Class are so numerous that joinder of all members is impracticable. Although the precise number of Class Members is unknown and is within the exclusive control of Generac and its authorized dealers, Generac has sold hundreds of thousands of SnapRS 801 switches in the United States, including tens of thousands in the State of Tennessee.

75. **Commonality**. The Claims of Plaintiff and the Nationwide Class and Tennessee Class involve common questions of fact and law that will predominate over any individual issues. These common questions include, but are not limited to:

a. Whether the SnapRS 801 switches that Generac designed, manufactured, marketed, distributed, and/or sold contained a defect that caused abnormal shutdown of energy production from PV modules (solar panels) and/or arrays of PV modules;

b. Whether the SnapRS 801 switches that Generac designed, manufactured, marketed, distributed, and/or sold contained a defect that caused the switches to melt, deform, and/or catch fire;

16

c. Whether Generac knew or should have known of these defects in the SnapRS 801 switches at the time of designing, marketing, distributing, and/or selling the SnapRS 801 switches;

d. Whether Generac knew or should have known that its representations regarding the functioning, efficiency, and safety of its PWRcell solar energy and battery storage systems, which included the SnapRS 801 switches as components, were false at the time of designing, marketing, distributing, and/or selling the SnapRS 801 switches;

e. Whether the defects and safety hazards of the SnapRS 801 switches constitute material facts that reasonable consumers would have considered in deciding whether to purchase Generac PWRcell solar energy and battery storage systems equipped with the SnapRS 801 switches;

f. Whether Generac's conduct violates consumer protection statutes and other laws as asserted herein;

g. Whether Generac had a duty to disclose the defects and safety hazards of the SnapRS 801 switches to Plaintiff and the other Class Members;

h. Whether Generac omitted, actively concealed, and/or failed to disclose material facts about the SnapRS 801 switches;

i. Whether concealment of the defects and safety hazards of the SnapRS 801 switches would have induced reasonable consumers to act to their detriment by purchasing solar energy systems equipped with the SnapRS 801 switches;

j. Whether Plaintiff and the other Class Members are entitled to equitable relief, including, but not limited to, restitution and injunctive relief; and

k. Whether Plaintiff and the other Class Members are entitled to damages and other monetary relief and, if so, in what amount.

76. **Typicality.** Plaintiff's claims are typical of Nationwide Class and State Class Members' claims. As described herein, Plaintiff and the other Class Members purchased SnapRS

17

801 switches as part of their Generac PWRcell solar energy and battery storage systems and these SnapRS 801 switches were designed, manufactured, marketed, distributed, and/or sold by Generac.

77.    Plaintiff and the other Class Members have been damaged by Generac's misconduct. Plaintiff and the other Class Members have incurred similar or identical losses related to the SnapRS 801 switches. Furthermore, the factual bases of Generac's misconduct are common to all Class Members and represent a common thread of misconduct resulting in injury to all Class Members.

78.    **Adequacy.** Plaintiff will fully and adequately represent and protect the interests of the Nationwide Class and State Class because they share common interests with Class Members as a result of Generac's misconduct.

79.    Plaintiff has retained counsel with experience in complex, commercial, multiparty, mass tort, consumer, and class action litigation. Plaintiff's counsel has prosecuted dozens of complex class actions, including those involving defective products, in state and federal courts across the country.

80.    Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel have interests adverse to those of the Classes.

**Fed. R. Civ. P. 23(b) Prerequisites**

81.    **Predominance.** Questions of law and fact common to the Nationwide and State Class, including those listed above, predominate over questions affecting individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual damages on the matter can be readily calculated. Thus, the question of individual damages will not predominate over legal and factual questions common to the Nationwide Class and State Class. Additionally, Generac has acted or refused to act on grounds

18

that apply generally to the Nationwide Class and State Class, so that final injunctive relief and/or corresponding declaratory relief is appropriate with respect to the Nationwide Class and State Class.

82.     **Superiority.** Generac's scheme treated consumers as a Class to be uniformly deceived. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff and Class Members have all suffered and will continue to suffer economic harm and damage as a result of Generac's wrongful conduct, which was directed toward Class Members and the public as a whole, rather than specifically or uniquely against any individual Class Members. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Generac's misconduct. Absent a class action, Class Members will continue to incur damages, and Generac's misconduct will continue without effective remedy.

83.     **Declaratory and Injunctive Relief.** Class wide declaratory, equitable, and injunctive relief is appropriate under Rule 23(b)(1) and/or (b)(2) because Generac has acted on grounds that apply generally to the Class, and inconsistent adjudications with respect to Generac's liability would establish incompatible standards and substantially impair or impede the ability of Class members to protect their interests. Class wide relief and Court supervision under Rule 23 assures fair, consistent, and equitable treatment and protection of all Class Members, and uniformity and consistency in Generac's discharge of its duties to perform corrective action regarding the defective SnapRS 801 switches.

## TOLLING OF THE STATUTE OF LIMITATIONS

**A**.     **Discovery Rule Tolling**

84. Because Generac concealed the existence of the SnapRS 801 defect, Class members had no way of knowing about the unreasonable risk posed by the SnapRS 801.

85. Within the period of any applicable statutes of limitation, Plaintiff and members of the proposed Classes could not have discovered through the exercise of reasonable diligence that Generac was concealing the conduct complained of herein.

86. Plaintiff and the other Class members did not discover, and did not know of, facts that would have caused a reasonable person to suspect that Generac did not report information within its knowledge to federal and state authorities, its dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that Generac had concealed information about the unreasonable risk posed by the SnapRS 801, which was discovered by Plaintiff only shortly before this action was filed.

87. For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to the SnapRS 801 defect.

**B.    Fraudulent Concealment Tolling**

88. All applicable statutes of limitation have also been tolled by Generac's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the period relevant to this action.

**C.    Estoppel**

89. Generac was under a continuous duty to disclose to Plaintiff and the other Class members the true character, quality, and nature of the SnapRS 801 defect.

90. Generac knowingly, affirmatively, and actively concealed or recklessly disregarded the true nature, quality, and character of the SnapRS 801 defect.

91. Based on the foregoing, Generac is estopped from relying on any statutes of limitations in defense of this action.

**CAUSES OF ACTION**

## COUNT I
### (Violation of Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*
### on behalf of the Nationwide Class)

92.     Plaintiff incorporates by reference all material facts in this Complaint as though fully set forth herein.

93.     Plaintiff brings this Count on behalf of themselves and the Nationwide Class.

94.     This Court has jurisdiction to decide claims brought under the Magnuson-Moss Warranty Act (for the purpose of this Count, the "Act") by virtue of 28 U.S.C. § 1332(a)-(d).

95.     The SnapRS 801 switches are "consumer products" within the meaning of the Act. 15 U.S.C. § 2301(1).

96.     Defendant is a "supplier" and "warrantor" within the meaning of 15 U.S.C. § 2301(4) and (5). Plaintiff and the other Class Members are "consumers" who purchased "consumer products" for purposes of 15 U.S.C. § 2301(1) and (3) because they purchased the SnapRS 801 switches for personal, family, or household purposes.

97.     The Act provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. 15 U.S.C. § 2310(d)(1).

98.     Under the Act, damaged "consumers" have a private cause of action against any warrantor that fails to comply with a written or implied warranty.

99.     The terms of written warranties and implied warranty were part of the basis of the bargain between Plaintiff and all other Class Members when purchasing their solar energy and battery storage system equipped with the SnapRS 801 switches.

100.     Defendant breached these written and implied warranties as described in detail above.

101.     The SnapRS 801 switches share common design defects, which defects generate heat in the SnapRS 801 switches causing them to melt, deform, and/or catch fire during normal use.

21

102.     Plaintiff and each of the other Nationwide Class Members have had sufficient direct dealings with either Defendant or its agents (including Generac authorized dealers or solar contractors—the companies that installed their residential solar energy systems) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each of the other Nationwide Class Members, on the other hand. Alternatively, and without prejudice to the foregoing, privacy is not required because Plaintiff and each of the other Nationwide Class members are intended third-party beneficiaries of contracts between Defendant and its authorized dealers, and specifically, of Defendant's implied warranties. The authorized dealers (solar contractors) were not the intended ultimate consumers of the SnapRS 801 switches, have no rights under the warranty agreements provided with the PWRcell solar energy and battery storage systems which included the SnapRS 801 switches and such the warranty agreements were designed for and intended to benefit the consumers only.

103.     Defendant has refused to compensate Plaintiff's and Class Members' damages arising from decreased energy production from their solar energy systems caused by malfunctioning SnapRS 801 switches, despite the fact that malfunctioning SnapRS 801 switches are not covered by the warranty.

104.     Affording Defendant a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here. On or after April 2021 and possibly before, at all times material, Defendant knew, should have known, or was reckless in, not knowing of its misrepresentations and omissions concerning the SnapRS 801 switches to perform as warranted. Nonetheless, it failed to rectify the situation and/or disclose the defects and safety hazards. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement for Plaintiff to resort to an informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

105.     As a direct and proximate result of Defendant's breach of the written warranties and the implied warranty of merchantability, Plaintiff and Class Members have suffered damages in an amount to be determined at trial.

106.     Plaintiff's and Class Members' individual claims meet or exceed $25.00 in value. The amount in controversy collectively on behalf of the Class meets or exceeds $50,000.00 in value (exclusive of interest and costs) on the basis of all claims to be determined in this suit.

107.     Plaintiff and the Nationwide Class seek all damages permitted by law, including incidental and consequential damages, compensatory damages, court costs and attorneys' fees, and any other just and proper relief available under the Act.

## COUNT II
### (Fraudulent Concealment on behalf of the Nationwide Class or, in the alternative, the Tennessee Subclass)

108.     Plaintiff incorporates by reference all material facts in this Complaint as though fully set forth herein.

109.     Plaintiff brings this Count on behalf of himself and the Nationwide Class or, in the alternative, on behalf of each the Tennessee Subclass.

110.     As alleged above, Defendant concealed or failed to disclose material facts concerning the defects and safety hazards of the SnapRS 801 switches in order to defraud and mislead Plaintiff and Class Members about the ability to function and safety of the SnapRS 801 switches.

111.     Defendant failed to disclose to Plaintiff and Class Members that SnapRS 801 switches possessed common design defects which generate heat in the SnapRS 801 switches causing them to melt, deform, and/or catch fire during normal use.

112.     Defendant knew that these material facts and common defects regarding the functioning and safety of the SnapRS 801 switches should be disclosed.

113.     Defendant concealment and failure to disclose these material facts and known common defects induced Plaintiff and Class Members to act by purchasing—through solar contractors—Generac's PWRcell solar energy and battery storage systems equipped with SnapRS 801 switches.

114.     Defendant had a duty to disclose these material facts before and after Plaintiff and Class Members purchased their solar energy systems.

115.     Defendant failed to notify Plaintiff and Class Members of the defects and safety hazards of the SnapRS 801 switches.

116.     Defendant again had a duty to disclose these material facts.

117.     Defendant's concealment or failure to disclose the design defects common to SnapRS 801 switches was material to consumers because the SnapRS 801 switches affected the ability to function and safety of Plaintiff's and Class Members' solar energy systems.

118.     Plaintiff and Class Members detrimentally relied on Defendant's fraudulent concealment, and Defendant intended for this reliance. Plaintiff and Class members had no way of discerning that Defendant was, in fact, deceiving them because the SnapRS 801 switches were sophisticated technology and the defects therein could only be discerned by solar contractors after significant troubleshooting, and not consumers.

119.     As a direct and proximate result of Defendant's fraudulent concealment, Plaintiff and Class Members sustained damages.

120.     Defendant's conduct was fraudulent, egregious and, by subjecting Plaintiff and Class Members to risk of Physical harm and fire damages, demonstrated a depraved heart and reckless indifference to their health, welfare, and safety, entitling Plaintiff and Class Members to punitive damages.

121.     Plaintiff demands judgment against Defendant and requests compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

**COUNT III**

**(Fraudulent Misrepresentation on behalf of the Nationwide Class or, in the alternative, the Tennessee Subclass)**

122.    Plaintiff incorporates by reference all material facts in this Complaint as though fully set forth herein.

123.    Plaintiff brings this Count on behalf of himself and the Nationwide Class or, in the alternative, on behalf of the Tennessee Subclass.

124.    As alleged above, Defendant made false statements of material fact to solar contractors and the public that Defendant's PWRcell solar energy and battery storage systems equipped with the SnapRS 801 switches were fit for their intended purpose and were of marketable quality.

125.    Defendant knew that the statements were false at the time they were made.

126.    Defendant made the false statements for the purpose of inducing Plaintiff and Class Members to purchase—through solar contractors— Defendant's PWRcell solar energy and battery storage systems equipped with SnapRS 801 switches.

127.    As a direct and proximate result of Defendant's fraud, Plaintiff and Class Members sustained damages.

128.    Plaintiff demands judgment against Defendant and requests compensatory damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

129.    Plaintiff reserves the right to seek punitive damages in the future after engaging in discovery.

**COUNT IV**

**(Negligent Misrepresentation on behalf of the Nationwide Class or, in the alternative, the Tennessee Subclass)**

130.     Plaintiff incorporates by reference all material facts in this Complaint as though fully set forth herein.

131.     Plaintiff brings this Count on behalf of himself and the Nationwide Class or, in the alternative, on behalf of the Tennessee Subclass.

132.     In the alternative to the facts supporting a claim of common-law fraud and fraudulent misrepresentation, Defendant made statements of material fact that Defendant believed to be true about the functionality and safety of the SnapRS 801 switches.

133.     Defendant was negligent in making false statements to solar contractors and the public that Generac's PWRcell solar energy and battery storage systems equipped with the SnapRS 801 switches were fit for their intended purpose and were of marketable quality.

134.     Defendant should have known that the statements were false.

135.     Defendant intended to induce Plaintiff and Class Members to rely on the misrepresentations and omissions by purchasing PWRcell solar energy and battery storage systems equipped with the SnapRS 801 switches.

136.     Plaintiff and Class Members acted in justifiable reliance on the misrepresentations and omissions. As a direct and proximate result of Defendant's negligent misrepresentations and omissions, Plaintiff and Class Members sustained damages: the SnapRS 801 switches have caused decreased energy production from Plaintiff's and Class Members' solar energy systems and the switches are subject to safety hazards including deforming, melting and/or catching fire that can damage their solar energy systems and property.

137.     Plaintiff demands judgment against Defendant and requests compensatory damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

138.     Plaintiff reserves the right to seek punitive damages in the future after engaging in discovery.

## COUNT V
### Breach of Implied Warranty
### (On Behalf of Plaintiff and the Nationwide Class and, In the Alternative, the Tennessee Subclass)

139.    Plaintiff hereby adopts and incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

140.    Generac is a merchant and was at all relevant times involved in the manufacturing, distributing, warranting, and/or selling of the Systems.

141.    The Systems are goods within the relevant laws and Generac knew or had reason to know of the specific use for which the Systems, as goods, were purchased.

142.    The implied warranty of merchantability included with the sale of each System means that Generac warranted that the Systems would be fit for the ordinary purposes for which the Systems were used and sold, and were not otherwise injurious to consumers, that the Systems would pass without objection in the trade, be of fair and average quality, and conform to the promises and affirmations of fact made by Generac. This implied warranty of merchantability is part of the basis for the benefit of the bargain between Generac, and Plaintiff and putative Class Members.

143.    Generac breached the implied warranty of merchantability because the Systems are not fit for their ordinary purpose of safely and reliably managing electricity because, inter alia, the Systems contain the Defect, which ceases or decreases performance of the Systems. Therefore, the Systems are not fit for their particular purpose of safely and reliably managing electricity.

144.    The problems associated with the Defect are safety risks such that the Systems do not provide safe reliable electricity management, and therefore, there is a breach of the implied warranty of merchantability.

145.    Generac's warranty expressly applies to the original purchaser and any succeeding owner of the Systems on the original purchasing site, creating privity between Generac on the one hand, and Plaintiff and putative Class Members on the other.

27

146.     Nonetheless, privity is not required because Plaintiff and putative Class Members are the intended beneficiaries of Generac's warranties and its sales through retailers. Generac's retailers were not intended to be the ultimate consumers of Systems and have no rights under the warranty agreements. Generac's warranties were designed for and intended to benefit the consumer only and Plaintiff and putative Class Members were the intended beneficiaries.

147.     More specifically, Generac's intention that its warranties apply to Plaintiff and putative Class Members as third-party beneficiaries is evident from the statements contained in its product literature, including the Limited Warranty. Likewise, it was reasonably foreseeable that Plaintiff and putative Class Members would be the intended beneficiaries of the Systems (as they are Systems intended, marketed, and sold for residential—and not retail—use) and warranties.

148.     Generac impliedly warranted that the Systems were of merchantable quality and fit for such use. These implied warranties included, among other things: (i) a warranty that the Systems manufactured, supplied, distributed, and/or sold by Generac were safe to use; and (ii) a warranty that the Systems would be fit for their intended use while they were being used by consumers.

149.     Contrary to the applicable implied warranties, the Systems, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiff and putative Class Members with safe and reliable electricity management. Instead, the Systems suffered, and continue to suffer, from a design and/or manufacturing defect, as alleged herein.

150.     Generac's failure to adequately repair or replace the defective Systems caused the warranty to fail in its essential purpose.

151.     Generac breached the implied warranties because the Systems were sold with a design and/or manufacturing Defect, which substantially reduced or ceased the expected performance of the Systems and made them unsafe during ordinary, intended, residential use.

152.     As a direct and proximate result of the foregoing, Plaintiff and putative Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

28

<u>**COUNT VI**</u>
**Breach of Express Warranty**
**(On Behalf of Plaintiff and the Nationwide Class and, In the Alternative, the Tennessee Subclass**)

153.    Plaintiff hereby adopts and incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

154.    Plaintiff and putative Class Members purchased the Systems from Defendant through its authorized retailers.

155.    Generac is and was at all relevant times a "merchant" under U.C.C. § 2-313, and related state-specific U.C.C. provisions.

156.    In connection with its sale of the Systems, Generac, as the designer, manufacturer, marketer, distributor, or seller, expressly warranted that the Systems were safe and reliable at managing electricity.

157.    Generac's warranty representations consist of its pervasive marketing campaign, including the representations described herein that are made online and on its packaging.

158.    The express written warranties covering the Systems were a material part of the bargain between Generac and consumers. At the time it made these express warranties, Generac knew reasonable consumers, including Plaintiff and putative Class Members, were purchasing the Systems because they believed the System to be as represented and marketed.

159.    Each of the Systems has an identical or substantially identical product representation(s) as Generac represents that all its Systems safely and reliably manage electricity.

160.    Generac breached its express warranties by selling Systems that were, in actuality, not safe and reliable at managing electricity as promised in the labeling and marketing. Generac breached the warranty because it sold the Systems with a design and/or manufacturing Defect, which was known to Generac and unknown to consumers at the time of sale. Generac further breached the warranty because it improperly and unlawfully denies valid warranty claims, and it

29

has failed or refused to adequately repair or replace the Systems with units that are actually as represented.

161.     Generac breached its express warranty to adequately repair or replace the Systems despite its knowledge of the Defect, and/or despite its knowledge of alternative formulations, designs, materials, and/or options for manufacturing the Systems.

162.     Generac further breached its express written warranties to Plaintiff and putative Class Members in that the Systems contain the Defect at the time they leave the manufacturing plant, and on the first day of purchase, and by failing to disclose and actively concealing this risk from consumers.

163.     The Systems that Plaintiff and putative Class Members purchased contained a Defect which makes them unable to safely and reliably manage electricity and causes loss of the System, loss of use of the System, and loss of the benefit of their bargain. Generac's warranty expressly applies to the original purchaser and any succeeding owner of the Systems at the original site of the System for Systems purchased within the United States, creating privity between Generac on the one hand, and Plaintiff and putative Class Members on the other.

164.     Likewise, it was reasonably foreseeable that Plaintiff and putative Class Members would be the intended beneficiaries of the Systems and warranties, creating privity or an exception to any privity requirement. Plaintiff and putative Class Members are the intended beneficiaries of Generac's warranties and its sale through retailers. The retailers were not intended to be the ultimate consumers of the Systems and have no rights under the warranty agreements provided by Generac. Generac warranties were designed for and intended to benefit the consumer only and Plaintiff and putative Class Members were the intended beneficiaries of the Systems as the Systems are intended, marketed, and sold for residential—and not retail—use.

165.     Generac has been provided sufficient notice of its breaches of the express warranties associated with the Systems.

166.     Upon information and belief, Generac received further notice and has been on notice of its breach of warranties through its sale of the Systems and of its breaches of warranties

through customer warranty claims reporting problems with the Systems, consumer complaints at various sources, and its own internal and external testing.

167. As a direct and proximate result of Generac's breach of its express written warranties, Plaintiff and putative Class Members suffered damages and did not receive the benefit of the bargain and are entitled to recover compensatory damages, including, but not limited to, the cost of inspection, repair, and diminution in value. Plaintiff and putative Class Members suffered damages at the point-of-sale stemming from their overpayment for the Systems, in addition to loss of the Systems and its intended benefits.

**COUNT VII**

**(Unjust Enrichment on behalf of the Nationwide Class or, in the alternative, the Tennessee Subclass)**

168. Plaintiff incorporates by reference all material facts in this Complaint as though fully set forth herein.

169. Plaintiff brings this Count on behalf of himself and the Nationwide Class or, in the alternative, on behalf of the Tennessee Subclass.

170. Plaintiff and Class Members conferred a benefit on Defendant by purchasing—through solar contractors—Generac's PWRcell solar energy and battery storage systems equipped with SnapRS 801 switches.

171. Defendant voluntarily accepted and retained the benefit conferred by Plaintiff and Class Members in the form of profits from selling its PWRcell solar energy and battery storage systems equipped with SnapRS 801 switches.

172. The benefits that Defendant received and retained are unjust, and inequity has resulted.

173. Defendant knowingly accepted the unjust benefits of its misconduct.

174. It is inequitable and unconscionable for Defendant to retain those unjust benefits without paying value to Plaintiff and the Class Members.

175.    As a result of Defendant's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other Class Members, in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action pursuant to one or more of the proposed Classes, as they may be modified or amended, and respectfully requests this Court:

A.    Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

B.    Appoint Plaintiff as the representatives of the Classes and his counsel as Class counsel;

C.    Award damages, including compensatory and exemplary damages, to Plaintiff and all other Class Members;

D.    Award Plaintiff and Class Members actual damages sustained;

E.    Award Plaintiff and Class Members such additional damages, over and above the amount of their actual damages, which are authorized and warranted by law;

F.    Grant restitution to Plaintiff and Class members and require Defendant to disgorge inequitable gains;

G.    Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendant to recall and/or replace the SnapRS 801 switches, or, at a minimum, to provide Plaintiff and Class members with appropriate curative notice regarding the existence and cause of the defect;

H.    Award Plaintiff and Class Members punitive damages if discovery merits such an award;

I.      Award Plaintiff and Class members their reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

J.      Award such other relief as this Court deems just and appropriate.


### DEMAND FOR JURY TRIAL

Plaintiff hereby demands that this matter be tried before a jury.


Dated:  January 10, 2023

By: /s/Nola J. Hitchcock Cross
Nola J. Hitchcock Cross

CROSS LAW FIRM, S.C.
WI State Bar No. 1015817
Mary C. Flanner
WI State Bar No. 1013095
845 North 11th St.
Lawyers' Building
Milwaukee, Wisconsin 53233
Tel: (414) 224-0000
Fax: (414) 273-7055
njhcross@crosslawfirm.com
mflanner@crosslawfirm.com
 /s/ Stephen R. Basser
 Stephen R. Basser

BARRACK RODOS & BACINE
Stephen R. Basser
E-mail: sbasser@barrack.com
Samuel M. Ward
E-mail:  sward@barrack.com
One America Plaza
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874

33

John G. Emerson
EMERSON FIRM, PLLC
2500 Wilcrest, Suite 300
Houston, TX 77042
Jemerson@emersonfirm.com
Telephone: (800) 551-8649
Facsimile: (501) 286-4659
Application for Admission will be filed

*Attorneys for Plaintiff and the Putative Class*